## Boyd *versus* Negley.

1. The line of a lateral railroad was surveyed and marked on the ground, differing somewhat from the location described in the petition, but the damages were assessed for it as located. *Held*, that this was the true and authorized line.

2. The difference was the omission by mistake of one section. This was amendable at any stage of the proceedings, and the Supreme Court would treat it as amended.

3. If the jury had proceeded to assess damages on the route marked rather than that of the petition, the owner of the land might then have objected, and an amendment would have been allowed.

4. It is not necessary that the petition should describe the grade of the road.

5. When a petitioner adopts a grade before damages are assessed and marks the grade along the route, it would be inequitable to permit him to change it after assessment, and adopt one more injurious to the landowner.

APPEAL from the decree of the District Court of *Allegheny county*. In Equity.

Felix C. Negley, being the owner of coal-mines in Allegheny county, presented his petition to the court for leave to construct a lateral railroad from his mines, through lands of Mary M. Boyd, to the Allegheny Valley Railroad, the petition setting forth the beginning, courses and distances, &c., as required by the Act of Assembly : there was also filed with the petition a plot showing the location of the proposed road. Viewers were appointed by the court, who assessed damages to Mrs. Boyd at $800. Both parties appealed, and on the trial of the appeal the jury assessed the damages of Mrs. Boyd at $330. After final judgment, Negley and his contractor entered upon Mrs. Boyd's land to construct the road.

Mrs. Boyd with her husband then filed the bill, which is the subject of the decree appealed from, against Negley and Martin Howland, the contractor for building the road. The subpœna was issued February 11th 1862.

The bill, after reciting the title of Mrs. Boyd and the proceedings of Negley in relation to the lateral railroad, including the assessment of damages and the entry upon Mrs. Boyd's lands, sets out that the road " is on a location entirely different from that set forth in the petition and plot—and upon grades different from those represented on the pins ;" that the grades fixed by

[Boyd *v.* Negley.]

Morley, a surveyor of Negley, marked on the stakes—shown to the viewers, and proved to court and jury—brought out the lateral road at grade on the Allegheny Valley road; but that the grade adopted by Negley brings the lateral road out 16 feet higher than the Allegheny Valley Railroad, and that the *viewers* assessed no damages for the increased grade, which greatly augmented the damages; the bill then set out in detail the particulars in which the location is changed, and that the lands on the new location are more valuable, and prayed that the defendants might be restrained from constructing the road, except as set out in the petition, &c., and the grades as marked on the pins.

The defendants answered, that Negley himself being an engineer, located the part of the road complained of. Negley denied that he marked the grades on the pins, or pointed out such grade to the *viewers* or *jurors*, or that he has changed the grade where it is complained of: he admitted that the grade to which he was working, and on which he intended temporarily to construct the road, was not that originally intended or ultimately to be adopted, denying that the grade is material, and averring his right to change it; denied that the change damaged the plaintiff; that they are working on a location different from that marked on the ground, and indicated in the petition and plot, and avers that the location is that shown to the traverse *jury ;* they admitted that one distance of about 26 feet may have been by mistake omitted on the plot, but denied that the deflection amounted anywhere to 30 feet, and averred that it fell within the 20 feet allotted for the road ; they averred, if there was any mistake it was immaterial and was known to the plaintiff at an early stage of the proceedings, but not known to Negley, and that it was the belief that the mistake was caused by Boyd removing the defendants' stakes. A replication was filed, and a master appointed to take testimony and report. The master reported that the road was not on the location of Negley's petition and diagram, and gave the variation in detail, both as to change of location and grade ; that the ground occupied is more valuable than that mentioned in the petition ; and that Mrs. Boyd's damages are thus increased.

Upon exceptions by the defendants, the case was "referred back to the master, with instructions, to find and report upon the testimony already taken, and such other proofs as the parties may bring before him, whether the railroad, as built by the defendant, is or is not constructed on the line run and marked on the ground by the defendant, and shown to the jury, and that for which they assessed damages ; and if not, what and where are the deviations from said line."

The master made a supplemental report, with the testimony taken by him. He reported, amongst other things, that several lines were run for Negley—one by Morley before the view ; one

[Boyd *v.* Negley.]

by Duncan after the view and before the trial; both of which differed from the location in the petition; that Duncan's line was pointed out to the jury on the appeal, as that upon which damages were to be assessed; that a new line was run by Brady, surveyor for defendant, differing from all the others; that on or near this the road is built; that the viewers and jurors viewed a line upon or near the line upon which the road is actually built, "upon or near which line they assessed the damages."

Exceptions were filed to this report, one of which was:—the master erred in not finding unconditionally, that the lateral railroad of defendant is built upon the ground viewed by the viewers and jury, and that upon which the damages were assessed by them.

On the 23d of September 1865, the court made an interlocutory decree, that "the road in question is built substantially on the line upon which damages were assessed, both by the viewers and the jury:—it is ordered that the report be so corrected and confirmed."

On the 19th of June 1866, by leave of the court, Mrs. Boyd filed an amended bill, which set out that since filing the original bill, defendants had built the lateral road upon the location and in the manner set forth in the master's reports; and prayed that they be ordered to remove the road from its present location to the location called for in the petition; to alter the grades to conform to those originally adopted by Negley, and to restore the lands illegally encroached upon, &c.

Upon hearing, the court, August 11th 1866, dismissed the bill with costs. The plaintiff appealed, and assigned this decree for error.

*Hamilton & Acheson* and *R. & S. Woods*, for appellants, cited Hays *v.* Risher, 8 Casey 174; Lateral Railroad Act of May 5th 1832, § 1, 3, Purd. 846; Neal *v.* Connellsville Railroad Co., 7 Casey 19; Redfield on Railw. 192; Commonwealth *v.* Erie & N. E. Railroad, 3 Casey 355; 21 E. L. & Eq. 620; Lee *v.* Milner, 1 Eng. Railway Cases 635; Id. 101; Commonwealth *v.* Pittsburgh and Connellsville Railroad, 12 Harris 159; Boyd *v.* Negley, 4 Wright 383.

*W. C. Moreland* and *A. M. Brown*, for appellees, cited Lateral Railroad Act, May 5th 1832, Purd. 846; Hays *v.* Risher, 8 Casey 174; Boyd *v.* Negley, 4 Wright 377.

The opinion of the court was delivered, February 4th 1867, by

STRONG, J.—Having examined the evidence reported by the master in this case, we are of opinion that the lateral railroad has been built on the line on which it was first located by the petitioner, and that the assessment of damages was made both by the

[Boyd *v.* Negley.]

viewers and the appellate jury, for such a location. The seeming confusion in regard to this matter, arises from the fact that more than one line was run before the viewers came upon the ground. Of these one was run and marked, partially at least, by Mr. Darley. It was not, however, run for the petitioner, but at the instance of the appellant. Another line was run by Morley, and still a third by Mr. Negley himself. It was this last line that was adopted by him and marked upon the ground; and it was this line that was exhibited to the viewers and the jury as the located route of the proposed railroad. For a road on such a route the damages were finally assessed, and upon the route the road has been built. Thus much is satisfactorily established by the evidence.

But it is said the route upon which the railroad has been built does not correspond with the route described in the petition. There is no substantial variance between the line of construction and the line of the location, as it was surveyed and marked upon the ground. But there is a slight variance between that line and the description of it contained in the petition. A mistake was manifestly made in the description. But the true and authorized line of the road, is that which was surveyed by the petitioner and marked upon the ground. The description is but evidence of the line. The mistake in this case was the omission of one section about 30 feet in length. It was undoubtedly amendable at any stage of the proceedings, and hence, if necessary, we will treat it now as amended, especially as the damages have been assessed for the route actually appropriated. Under the Act of Assembly it was the duty of the viewers and the jury to view the route surveyed and marked on the ground, and to make report thereon. It must be presumed, and indeed it is proved, they did so. If, as appears to have been the case, the route selected and marked on the ground was mistakenly described in the petition; and if the viewers and the jury proceeded to assess damages on the route marked rather than on that described, the owner of the land might then have objected, and an amendment of the petition would have been allowed. But at this late period, when the assessment of damages has become final, and when the road has been constructed on the line surveyed, marked on the ground and considered by the viewers, it is not to be deemed wrongly located because the description in the petition does not correctly, in all particulars, point out the same line as that actually adopted.

It is next contended that the grade of the road has been changed since the damages were assessed, and that the change causes an increased hurt to the appellant. The petition did not undertake to describe the grade of the proposed road. Such a description was not necessary, as was ruled in Risher *v.* Hays, 4 Wright 377. But when a petitioner adopts a grade before the

[Boyd *v.* Negley.]

damages are assessed, and marks the grade adopted upon grade-pins along the route, it would be inequitable to permit him to change it after the assessment, and to adopt another more injurious to the owner of the land. In such a case, the jury ought to be presumed to have assessed such damages as would be caused by the construction of a road with the grade marked, and with the filling or embankments indicated. If, therefore, it clearly appeared that the jury had been informed that the petitioner intended to construct the road with another grade less hurtful to the owner of the land, than the one which he finally adopted, a court of equity should doubtless interfere. There is, however, no satisfactory evidence that the damages were assessed with reference to any defined grade. It does not appear that any grade-pins were set up on the line at the time of the assessment. Line-pins were, but they do not appear to have been marked for grade. The jury, therefore, could not have been misled by them. One witness testifies indeed, that a surveyor of the petitioner exhibited to the jury a map and profile of the road ; and that the grade now differs from that represented in the profile. But he speaks of the profile from recollection only. It is not exhibited, nor has any effort been made to procure it. Besides, the injury from a change of grade is alleged to be changing it in front of the mansion-house of the appellant. The answer denies that any change has been made at that point, and the force of the answer is not overcome by the single oath of Mr. Darly. It is also to be observed, that no one of the jurors, of whom several were examined, asserts that any grade was pointed out to them. That a change of grade has been made in some parts of the line is proved, and it is admitted in the answer. That, however, is not cause for complaint, unless the jury was led to believe that the road would be constructed at a different grade less injurious to the appellant, and that does not satisfactorily appear. The appellant, therefore, fails to establish such a case as entitles him to the relief for which he prays, and his appeal must fail.

The decree of the District Court is affirmed.