---

# McGunnegle *v.* Pittsburg & Lake Erie Railroad Company, Appellant.

*Railroads—Condemnation proceedings—Description of land—Amendment.*

A judgment on a verdict for plaintiff in railroad condemnation proceedings will not be reversed because the trial judge refused to permit the petition to be amended by striking therefrom descriptions of land below low-water mark in a river, where it appears that the amendment was not asked for until after twenty-three witnesses for plaintiff had been examined as to value without objection, and it also appears that the court in its charge clearly and distinctly instructed the jury that they could allow compensation to the plaintiff only for land which she owned, and which did not extend beyond low-water mark.

An owner of land fronting on a navigable river has no right to make any filling beyond low-water mark, nor to put any structure or filling even between high-water line and low-water line that would be an obstruction to the use of that part of the river for navigation.

Remarks made by witnesses and even by the court as to the effect of fillings below high-water mark and beyond low-water mark, are not grounds for reversal, where the jury is fully, clearly and distinctly instructed that the effect of such fillings cannot be considered in determining values.

Argued Oct. 26, 1905. Appeal, No. 90, Oct. T., 1905, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1903, No. 47, on verdict for plaintiff in case of Maria

L. McGunnegle v. Pittsburg and Lake Erie Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from report of jury of view. Before KENNEDY, P. J.

At the trial defendant made the following motion:

Mr. Smith: I desire to present this morning an amendment in the bond case at No. 314, February Term, 1903, and in this proceeding which is as follows:

And now, to wit: October 24, 1904, comes the Pittsburg & Lake Erie Railroad Company by its counsel and moves the court to amend the description of the land to be condemned by striking out the words " together with all the land lying between the harbor line and the low-water line of the Ohio river."

Mr. Ferguson: That is objected to as too late. It is specially objected, that the railroad company having elected to condemn and having filed its bond, it is now too late to abandon the condemnation, either in whole or in part.

Motion refused.

To which ruling counsel for defendant request an exception. Exception allowed and bill sealed. [1]

D. K. McGunnegle, a witness for the plaintiff, was asked this question:

" Q. Do you know where the low-water line of the Ohio river was in front of your mother's property, before the Davis island dam was constructed, with reference to the harbor line ? "

Mr. Smith: What do you propose to prove?

Mr. Ferguson: We propose to prove in connection with the petition of the railroad, filed in this case, defining what it condemned, that the low-water line of the Ohio river, in front of the property of the plaintiff, was between the harbor line, as shown on the petition, and Brunot island.

Objected to as incompetent and irrelevant for the reason that, under the laws of this state, " pool full " being the stage of the water when the water is just abreast of Davis island dam is, for the purposes of this case, and for any other purpose, low-water line. Counsel for the defendant desire to state also, that in this proceeding it is not the intention, or it was not the anticipation that any rights whatever could be possibly acquired under this proceeding beyond the harbor line, the intention

being merely to take whatever title Mrs. McGunnegle had under the grants from the commonwealth and the mesne conveyors.

The Court: Objection overruled.

To which ruling of the court counsel for defendant except. Exception allowed and bill sealed. [2]

Mr. Ferguson : Q. How is that, Mr. McGunnegle ? A. The low-water line is outside of the harbor line through our property."

J. W. Mayes, a witness for the plaintiff, was asked this question :

" Q. If that land had been filled up out to the harbor line, would you put the value at $100,000, or what would you put it at ? "

Objected to.

The Court: Objection overruled.

To which ruling of the court counsel for defendant except. Exception allowed and bill sealed. [3]

" A. No, if that was filled up I would add considerable to the price of that land, at least one-third."

At the request of counsel for the defendant, the court stated the following for the record :

Addressing counsel for defendant, the court asked whether he would guarantee that this company, the defendant, would not fill beyond " pool full " line. This remark was made during the argument of counsel, counsel for plaintiff arguing that the railroad company, as the successor of the plaintiff, had a right to build to the harbor line, and counsel for the railroad company arguing that they had not.

Now, counsel for defendant move the court to withdraw a juror and continue the case.

Motion refused. [4]

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellant.

*J. S Ferguson,* with him *E. G. Ferguson,* for appellee, cited : Johnston v. Callery, 173 Pa. 129; Fischer v. Catawissa R. R. Co., 175 Pa. 554.

OPINION BY MR. JUSTICE BROWN, January 2, 1906 :

On February 25, 1903, the Pittsburg and Lake Erie Rail-

road Company filed its bond to secure to Mrs. Maria L. Mc-
Gunnegle compensation for land which it had appropriated for
railroad purposes.  It is located in the borough of Esplen, Al-
legheny county, and is minutely described by metes and bounds
in the petitions for the approval of the bond and appointment
of viewers.  The quantity is given as 6.757 acres, " together
with all the land lying between the harbor line and the low-water
line of the Ohio river."  Harbor line is a line established by the
secretary of war, in pursuance of an act of Congress, and beyond
it " no piers, wharves, bulkheads, or other works shall be ex-
tended, or deposits made, except under such regulations as may
be prescribed from time to time by him."  This line is at from
fifty to three hundred feet from low water, which in this case is
" pool full."  " Pool full," indicating low water, is " the surface
of the water when it lies just even with the crest of the Davis
island dam when it is up."  This is the definition given by
H. C. Gould, an assistant engineer in the service of the United
States, and is conceded all around to be correct.  The absolute
title of Mrs. McGunnegle extended from the land already oc-
cupied by the railroad company only to high water, and in the
space intervening between that line and low water, or pool
full, she had but a qualified fee, her right there being subject
to the public right of navigation: Lehigh Valley Railroad Co.
v. Trone, 28 Pa. 206; Freeland v. Pennsylvania Railroad Co.,
197 Pa. 529.  Beyond the low-water line the title remained in
the commonwealth, and the appellee had, therefore, no right
or ownership whatever between it and harbor line, the space
which the appellant distinctly stated it would take in the con-
demnation proceedings.

On appeal from the award of the viewers, the question of
the amount of compensation to which the appellee was entitled
was submitted to a jury, and the four errors specified are al-
leged to have been committed on the trial before that body.
The case was called on Monday, October 20, 1904, and on that
and the following day twenty-three of the twenty-five witnesses
called by the plaintiff were examined.  Each one called as to
the amount of damages sustained was examined, without ob-
jection by the defendant, as to the value of the land, which, in
its petitions for the approval of its bond and the appointment
of viewers, it said it would take, amounting to 6.757 acres,

"together with all the land lying between the harbor line and the low-water line of the Ohio river." Some of these witnesses fixed the damages by valuing the land by the acre, and there was testimony as to the quantity between harbor line and pool full, and between pool full and high-water mark. On the third day of the trial, and just before the plaintiff closed, the defendant moved to amend the description of the land to be condemned by striking out the words "together with all the land lying between the harbor line and the low-water line of the Ohio river." This was objected to as being too late, and a special objection was made that the railroad company, having elected to condemn and having filed its bond, could not abandon the condemnation, either in whole or in part. The amendment was refused and two more witnesses were then called by the plaintiff, who also testified, without objection, as to the value of the land taken, including the space between pool full and harbor line.

The first assignment relates to the refusal of the court to allow the amendment asked for by the appellant. It is urged that it should have been allowed, because, as Mrs. McGunnegle admittedly did not own the land lying beyond low water towards the river, the railroad company was not taking it from her, and her right to compensation was limited to her ownership, extending only to pool full or low water. The reason for refusing the amendment is not given by the learned trial judge, and we need not conjecture what it may have been, for the refusal could have done no possible harm to the defendant, in view of the clear, distinct and correct instructions given to the jury, that they could allow compensation to the plaintiff only for the land which she owned, and which did not extend beyond low-water mark. If the amendment had been allowed, the defendant could not have asked for more from the court than was said by the learned trial judge in support of its theory as to what land it could take. We might allow the amendment here, and, if so, there would be nothing in the record, so far as the quantity of land taken is concerned, of which the appellant could make any complaint; and the jury were most definitely instructed that for such quantity only could they allow compensation. In the general charge the learned and careful trial judge said: "The land is situated in

the Borough of Esplen, fronting on the Ohio river between the
old right of way of the defendant company and low-water mark
of the Ohio river. . . . We have had testimony here showing
not only the location of this property, but the location of what
is called the harbor line, which, for the purposes of this case,
I instruct you, is outside of the property taken by the railroad
company, that is, it is towards the channel of the river. The
property line, for the purposes of this case, is low-water mark,
as established by the line you have heard called 'pool full' in
the course of the trial. That is to be taken as the low-water
line for the purposes of this case, and the property taken and
appropriated by the railroad company is the property lying be-
tween the old right of way of the railroad company and low-
water line." Nine points were submitted by the defendant
and each of them was affirmed. Five of them were as follows:
Third. "That under the laws of this state, the plaintiff has
an absolute title in fee only to the high-water mark, with a
qualified title between high and low-water mark, subject to
the right of navigation." Fourth. "That for the purposes of
this case, the low-water mark is the line of the water at 'pool
full,' which is the line of the water when it is just at the crest
of the Davis island dam." Fifth. "That the owner of the
land has no right to put any structures or filling into the river
beyond low-water line." Sixth. "That no owner of land has
the right to put any structures or filling between high-water line
and low-water line that would be an obstruction to the use of
that part of the river for navigation." Eighth. "That the verdict
of the jury cannot be based upon any use of the land which would
contemplate a filling of the river to the so-called harbor line
under the testimony in this case." And in the ninth the de-
fendant stated its whole case in asking for the instruction,
"that the verdict of the jury in this case cannot be more than
the value of the plaintiff's land, computed to low-water mark,
at the time of the taking, less the value of any use that the
plaintiff may make of it not inconsistent with its use for rail-
road purposes." As already stated, the case went on without
a single objection made by the defendant to the testimony of
any witness as to what damages had been sustained by the
plaintiff for taking the land which, in its proceeding to condemn,
it alleged extended to harbor line, and all of which it said it

would take; but in the end the limit of the plaintiff's land to be taken by the defendant was definitely fixed by the court at "pool full," or low water, and the case was submitted to the jury just as the defendant asked that it be submitted. As a basis for their verdict, there was ample testimony as to the value of the land which the defendant could and does take. The refusal to allow the amendment could not, therefore, have harmed the appellant. Even if it had been allowed, the case would have been submitted just as it was submitted, by affirming every point presented by the defendant. Of the correctness of the general charge there could be, and is, no complaint. The first assignment is dismissed.

By the second assignment error is alleged in allowing D. K. McGunnegle to testify as to where the low-water line was in front of his mother's property before the Davis island dam was constructed. This testimony probably ought to have been rejected, for the line of low water before the construction of the dam was not the question before the jury; but the admission was harmless, in view of the instructions contained, not only in the general charge, but in the specific answer to defendant's fourth point, " that for the purposes of this case, the low-water mark is the line of the water at pool full, which is the line of the water when it is just at the crest of the Davis island dam." And so of the third assignment, complaining of the admission of the testimony of J. W. Mayes, that if the land had been filled up out to the harbor line he would add to the price of the land at least one-third, for in the answer to defendant's eighth point the jury were told that the verdict could not be based upon any use of the land which contemplated a filling of the river to the harbor line. The same instruction was contained in the answer to the fifth point.

It does not appear just when the trial judge made the remark complained of in the fourth assignment. It was made during the argument of counsel, which may have been a running discussion between them during the trial, in which the court intervened and made the remark attributed to it; but, whenever made, the defendant was not harmed by it, even if the jury heard it, for they were told that neither the defendant nor any one else could fill beyond low water. The correct instructions went further in stating that an owner of land front-

ing on a navigable river has no right to put any structures or filling even between high-water line and low-water line that would be an obstruction to the use of that part of the river for navigation.

The assignments are all dismissed and the judgment is affirmed.