## Walker License

*Alexander Ogle,* for Commonwealth.

*Norman A. Shaulis* of *Shaulis, Kimmel & Rascona,* for defendant.

COFFROTH, P. J., March 31, 1970.—This case is before the court on appeal from the suspension of appellant's driver's license by the Secretary of Revenue.

Testimony was taken before the court on March 2, 1970, and the case was argued on March 16, 1970, from which we make the following

### FINDINGS OF FACT

1. On May 10, 1969, appellant was operating his automobile in Somerset Borough. In the evening, he drove to the Old Farm, a popular drive-in restaurant. The place was open for business. He drove from the

public street upon the business property which is privately owned and which consists of a restaurant building at the front of the property, having an attached drive-in service area at the rear of the building consisting of the usual walkway for service personnel with parking stalls on both sides thereof. Surrounding these structures for purposes of access to and from the premises is a private vehicular cartway provided by the property owner.

2. After entering the property, appellant drove about half way through the property, then gunned his car and fishtailed it at a high rate of speed in the narrow cartway and pulled recklessly in front of another vehicle.

3. Officer Davis, observing this action, arrested appellant for operating his vehicle on private property without consent of the owner in a reckless manner under section 1001, paragraph (1.1), of The Vehicle Code. He paid his fine and costs without making any formal plea or contest and without consulting counsel.

4. At the time of the alleged offense, appellant was upon the restaurant property with the implied consent of the property owner.

5. A notice of departmental hearing dated November 5, 1969, citing appellant for violation of section 1001, paragraph (1.1), was mailed to him and received.

6. A notice dated December 19, 1969, was mailed to appellant and received by him, notifying him that his license was suspended for violation of section 1001, paragraph (1), reckless driving on the public highway.

7. On January 8, 1970, appellant filed his appeal.

8. Under date of January 21, 1970, the Secretary of Revenue mailed to appellant a corrective notice suspending his license for violation of section 1001, paragraph (1.1), which was received by him but which

he did not bring to the knowledge of his counsel who did not learn of the corrective notice until testimony was produced at the hearing.

9. There is no evidence of any prior conviction.

10. Appellant earns his livelihood as a truck driver, is married and has a family and will suffer hardship if deprived of his operator's license.

## DISCUSSION

Counsel for appellant rests his case upon the error of the Commonwealth in stating in the first suspension notice that the suspension was based on section 1001, paragraph (1), reckless driving on the public highway, whereas, in fact, the suspension was based on section 1001, paragraph (1.1), reckless driving on private property, for which appellant was actually convicted. Appellant's position is that the specification in the suspension notice of the statutory section on which the suspension is based is so vital that the suspension cannot stand, and that the Commonwealth may not amend or correct the error after the appeal is filed and after appellant has brought the error to the attention of the Commonwealth.

There is authority to support appellant's position. In Strayer License, 45 D. & C. 2d 498 (1968), the court in a similar situation sustained the appeal on the ground that there is no statutory authorization for an amended suspension notice and that the secretary must institute a new proceeding rather than attempt to correct an error after an appeal is taken. In Liska License, 27 D. & C. 2d 208 (1962), the court by dictum concurs with Strayer, although in Liska the suspension was upheld because the suspension notice, although stating the wrong section number, did correctly specify the reason for the suspension; in the instant case, neither of the suspension notices specified the reason but cited only the section number.

In Commonwealth v. Pickin, 30 Lehigh 205, cited by Commonwealth counsel, it was held that such an error in the suspension notice does not entitle appellant to a dismissal unless he can show prejudice.

We believe the correct rule is stated in Scavo Motor Vehicle Operator License Case, 206 Pa. Superior Ct. 544, 547, and in Vivio Motor Vehicle Operator License Case, 209 Pa. Superior Ct. 90, which hold that in the case of a material procedural error on the part of the Commonwealth, the trial court on appeal should not dispose of the case on procedural grounds but should remand the case to the secretary for corrective proceedings. A remand in this case would accomplish nothing; it would result only in another corrective notice such as appellant has already received, a foolish circumlocution which good sense ought to avoid. A useless remand will not be ordered, but the case allowed to proceed on the basis of the corrected notice: Commonwealth v. Halteman, 192 Pa. Superior Ct. 379. This procedure is in full accord with the modern approach to allowance of amendments in civil cases, even to changing the cause of action, where refusal of the amendment would simply entitle plaintiff to begin anew with a corrected pleading: Schaffer v. Larzelere, 410 Pa. 402. "The attainment of justice is over the highway of realities and not through the alley of technicalities": Peoples Natural Gas Co. Appeal, 399 Pa. 226, 234.

Although appellant's counsel was surprised by the production at the hearing of the corrective notice, appellant admitted receiving it and cannot be said to be surprised. Moreover, there is a substantial difference between surprise and irremediable prejudice to one's rights; surprise simply entitles one to a continuance, to a chance to investigate and to respond to the unexpected evidence, and not to a dismissal. In this case,

a continuance would not be helpful to appellant and none was requested.

Accordingly, we hold that the suspension may validly rest upon the corrective notice, provided the suspension is otherwise lawful. Therefore, this is a paragraph (1.1) case which does not fall within the point system, but which must depend for its legality upon section 618(b)(2), which authorizes suspension whenever the secretary finds upon sufficient evidence that appellant has committed a violation of The Vehicle Code. Our procedure on appeal is as follows:

1. The primary question before the court on appeal is whether appellant *committed* the alleged offense: Hall Motor Vehicle Operator License Case, 196 Pa. Superior Ct. 346, 349.

2. On appeal, the proceeding is de novo; it is the court's duty to determine independently on the basis of the appeal record whether the suspension is merited. Therefore, the test in the appeal is not whether the secretary abused his discretion but whether from the evidence before the court the license should be suspended; Handwerk Automobile License Case, 348 Pa. 263; Commonwealth v. Halteman, 192 Pa. Superior Ct. 379.

3. The proceeding is civil in character, and the Commonwealth must discharge its burden of proof by a preponderance of the evidence: Royer Motor Vehicle Operator License Case, 213 Pa. Superior Ct. 17.

4. The burden of proving that appellant committed the alleged offense is upon the Commonwealth: Commonwealth v. Halteman, supra.

5. The de novo determination is made independently of whether appellant was prosecuted, convicted, or pleaded guilty, or voluntarily paid a fine in a criminal proceeding: Commonwealth v. Funk, 323 Pa. 390; Hall Motor Vehicle Operator License Case, supra,

page 349; Royer Motor Vehicle Operator License Case, supra; Commonwealth v. Halteman, supra; Wilson v. Wilson, 100 Pa. Superior Ct. 451; Colon License, 47 D. & C. 2d 110; Marinelli License, 41 D. & C. 2d 1, 2; Haas License, 27 D. & C. 2d 86; Commonwealth v. Pluta, 26 D. & C. 2d 693, 696.

6. If the court finds on adequate evidence that appellant did not commit the offense, the appeal must be sustained and the suspension reversed.

7. If the court finds on adequate evidence that appellant did commit the offense, the appeal must be dismissed unless there are allowable mitigating circumstances: Commonwealth v. Emerick, 373 Pa. 388.

Applying these principles, we must determine whether appellant violated section 1001(1.1) of The Vehicle Code, which provides as follows:

"Reckless driving is unlawful, and for the purpose of this Act, is construed to include . . . Any person who drives any vehicle or tractor on private property without the consent of the owner or other person in control or possession thereof, carelessly disregarding the rights or safety of others or in a manner so as to endanger any person or property."

We have no difficulty in concluding that appellant's actions constitute reckless driving; by suddenly swerving in front of another vehicle, he carelessly disregarded the safety of others and drove in a manner so as to endanger persons and property. Nor is there any doubt that he was on private property. The only question is whether he was there "without the consent of the owner or other person in control or possession thereof." As is apparent from the findings of fact, we have concluded that appellant was there with the implied consent of the owner and did not, therefore, commit the offense charged.

The general rule of law is that a place of business

impliedly offers to the public an invitation to come upon the premises to do business; the implied invitation is not for the general public to utilize the area for whatever purpose desired but is offered only to those members of the public who would be potential customers, and would possibly contribute to the financial success of the venture: Logan Valley Plaza, Inc. v. Amalgamated Food Employees Union, 425 Pa. 382 (reversed 391 U.S. 308, 20 L.Ed. 2d 603). The Commonwealth must, therefore, prove the negative, lack of consent (Meth v. Broad Street and Bonded Building and Loan Association, 346 Pa. 331); this may be done positively by proving either that the owner, in fact, did not consent to appellant's presence and communicated that fact to him, or by proving the purpose for which appellant entered the property from which it can be determined whether consent is implied. If that purpose would not possibly contribute or is unrelated to the financial success of the venture, he was on the property without the necessary consent.

In the whole record, one question and one answer are the only testimony on the subject, in the direct examination of the arresting officer as follows:

"Q. According to your observation while you were there was this man a customer of the Old Farm Drive-In?

"A. To the best of my knowledge he was not."

The officer was not cross-examined on the subject. Although appellant was called in his own defense, he was not asked on direct examination the purpose of his presence, nor did the Commonwealth mention the issue in its cross-examination of him. No other witness was called. We do not know why appellant was on the property. The Commonwealth has the burden to establish all necessary factual elements (Commonwealth v. Anspach, 134 Pa. Superior Ct. 369), and it

has not met its burden on this issue of nonconsent for two reasons:

1. The officer's statement was hedged by the qualification "to the best of my knowledge," a red flag waved by the witness to announce that his knowledge might be incomplete. No proof was offered as to the extent of his knowledge, how long he had observed appellant, or whether he had appellant under observation for the entire duration of appellant's visit, or whether appellant might have been a customer without the officer's knowledge. Thus, the testimonial qualification of the witness is in doubt and is inadequate to persuade us that appellant at some time during his visit to the Old Farm was not, in fact, a customer;

2. Mere proof that appellant was not a customer, assuming such proof arguendo, is not sufficient evidence of nonconsent to appellant's presence on the property, because there are other legitimate purposes of a visit to a place of business from which consent of the owner may be implied. The visitor may enter the property intending to make a purchase but changes his mind; he may have come to look over merchandise but is as yet uncertain whether he will buy; he may have come to give an important message to his relative who is employed there or perhaps eating there, or to his girl friend or boy friend, or an unimportant message or no message, but simply to meet; or he may have come just to see who is at the Old Farm tonight, as young people who form the principal constituency of drive-ins are wont to do. Is it to be said in all of these cases that the owner did not consent, or would not consent, or that the visitor is a trespasser simply because he did not buy? Such a result would shock the common understanding of the scope of the implied invitation to the public to enter a place of business

today. What would happen to "browsing" and to "meet me at Gimbels," devices which businesses use to build good will and potential customers? Even under the language of Logan Valley, the visitor need not be an actual customer, but a *potential* one; his activity need have only a *possible* relation to the financial success of the venture. Every businessman knows that the heart and soul of success in business is good will, and that the first step in creating it is the step of the public visitor into his place of business. Whether the visitor buys today is not vital, because he may buy tomorrow. Let the owner of a popular drive-in rendezvous for young people like the Old Farm insist that only customers enter and that all casual visits stop, and he'll probably learn how essential to the financial success of the venture is this freedom to come and go, without probing at some sort of Checkpoint Charlie whether the visitor is going to buy today or not. Such a procedure might be valid for a restaurant with limited facilities which establishes a minimum charge for each visitor, but by common custom no such restriction is made unless announced and communicated to the business visitor in some way. According to the Commonwealth, if the driver has bought a package of chewing gum, he may be reckless with impunity; but if he is reckless before he gets the gum, let the driver beware. The theory of implied consent advanced by the Commonwealth is entirely too artificial, too unrealistic and out of touch with the facts of business life; it has a nice logic to it, but Holmes taught us long ago that the law's life is not logic, but experience. The statute is penal and must be strictly construed (46 PS §558; Slobig License, 1 D. & C. 2d 336), which means that nonconsent must be truly proved, not synthetically inferred.

Indeed, we do not fully comprehend the reason for

including the nonconsent provision in the act; it would seem that the reckless driving which endangers life or property is just as dangerous whether the driver is on the land with or without the owner's consent, and that the police power is adequate to proscribe such conduct regardless of consent. Elimination of the nonconsent clause would make more sense by penalizing all reckless driving on private property. But that is a matter for the legislature, and courts must struggle with the language as we have it. If reckless driving and "cowboying" at drive-in and shopping center facilities during business hours are the problem, this act is a poor and ineffective remedy so long as the nonconsent clause is there.

Having concluded that the Commonwealth has not proved that appellant committed the offense charged, the appeal must be sustained, and we, therefore, enter the following

## ORDER

Now, March 31, 1970, the appeal is sustained and the suspension order of the Secretary of Revenue is reversed. Costs on appellant.