The doctrine of res ipsa loquitur puts the master to an explanation of his conduct only so that it may appear whether he has fulfilled his duty.  But here everything was in complete order and strength, and no master could have used greater diligence.

However, I do not regard the rule as applicable.  The happening of the accident does not of itself speak of negligent masters, while the circumstances rather show them vigilant.  Nor does the happening of itself indicate of necessity negligence.  There are no intricate or obscured mechanical parts here involved, starting into motion uninfluenced by the operator, and thereby declaring that something was so out of repair as to permit the escape and application of power.  There the argument is that a machine in repair does not start of itself, that it did so start, and hence it was out of repair; so let the master show due inspection and needed correction.  In the present case, the plaintiff's case shows an abnormal slip, and all the simple parts normal, and no fact or opinion suggests that the foreman did aught that induced the fall.  The facts do not speak, and no expert has furnished an opinion upon which negligence can be based.  So the case is indeed void of anything that condemns the employers.

The judgment should be affirmed, with costs.  All concur.

---

(152 App. Div. 503.)

### In re CATSKILL AQUEDUCT, SECTION NO. 1.

(Supreme Court, Appellate Division, Second Department.   September 10, 1912.)

EMINENT DOMAIN (§ 245*)—ACQUISITION OF LAND FOR PUBLIC PURPOSES—RESERVATION OF EASEMENTS—MODIFICATIONS.

> Where a city, taking land for a water supply, took with a reservation of easements for ways of access to remaining land of the owner, it owed the owner compensation, and it could not thereafter provide other ways to reduce the consequential damages; and an order so permitting was not an amendment of a defect, allowed by Laws 1905, c. 724, § 23, authorizing amendments to cure defects and informality in proceedings to acquire land.

> [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 637; Dec. Dig. § 245.*]

Hirschberg, J., dissenting.

Appeal from Special Term, Westchester County.

Application of J. Edward Simmons and others, constituting the Board of Water Supply of the City of New York, to acquire real estate for the Catskill Acqueduct, Section No. 1, Parcel No. 40. From an order amending the petition, maps, and proceedings, the party aggrieved appeals.   Reversed.

Argued before HIRSCHBERG, BURR, THOMAS, WOODWARD, and RICH, JJ.

Leverett F. Crumb, of Peekskill, for appellant.
H. T. Dykman, of White Plains, for respondents.

THOMAS, J. The proceeding is to acquire land for the Catskill Aqueduct. The order appealed from was made on September 6, 1911, and is:

"That the petition, maps, and all the proceedings herein be * * * amended, so that the city of New York at its own expense shall be obliged to construct and leave open forever the rights of way shown on the plan and profile attached to the affidavit of J. Waldo Smith [petitioner's chief engineer], annexed thereto, across parcel 40, the north one to a maximum grade not to exceed 9 per cent., and the south one to a maximum grade not to exceed 9 per cent., as substituted for the rights of way shown upon the filed maps herein," and that the "commission give counsel for all parties in this proceeding ample opportunity to submit such further testimony as is made necessary and material by the foregoing order."

The land affected includes a pond, and contains 7,318 acres, lying on the east side of Locust avenue, in the town of Cortlandt, from which the city has taken 3,665 acres, which comprise the entire frontage on the avenue, whereby the land remaining to the claimant is without access, except as the original petition and map combined may make provision for rights of way towards the north and south ends. It seems that both ways were proven so inexpedient or difficult as to increase the consequential damages to the land not taken, and that in building the aqueduct the northern right of way proposed was entirely cut off, so that the rights of way as laid down on the original map cannot be had. For the purpose of furnishing proper ways, and thereby lessening the damage, the court has allowed two other and different rights of way to be substituted, as shown on the new map, and the petition amended accordingly. The engineer states that the new ways are substantially in the same position as the ways first shown, but with lighter grades. An inspection of the new maps shows that the ways do not occupy the same portion of the land taken, or the same amount thereof.

By due proceedings of the board of estimate and apportionment and the board of water supply, and the appointment and qualification of commissioners of appraisal herein, the title to the land vested in the city on February 16, 1907. Thereafter two trials were had. In one the report of the commissioners was set aside, while in the other the evidence had been closed before the motion for the present order was made. So far as appears, Smith, the engineer, is the sole authority for the present substitution of the land taken with new rights of ways for whatever vested in the city in February, 1907. In other words, the engineer, acting through the court, would cause the city to withdraw ways reserved to the owner, and to grant ways that were not reserved, and thereby diminish the compensation that was due the claimant on February 17, 1907, when the title passed and all rights were fixed, and compensation due to be ascertained and paid thereupon.

It is suggested that the case was tried upon the theory of giving practicable rights of way; but, when the commissioners were of late asked to adjourn to permit the motion for the amendment to be made, the chairman said that all testimony already given concerning the right of way and grades would be entirely inapplicable, and, although

the counsel for the city did not so consider, the important fact is that the chairman of the commission appreciated that the amendment would require new testimony and new consideration, and so, indeed, the order provides. The city had ample time after 1907 to move, and while it is not just that, after so protracted litigation, the matter of consequential damages should be reconsidered, yet that could be met measurably by imposing terms.

But there is no power. The city took with reservation of easements. Thereupon it owed the claimant compensation. It dictated the purchase, and cannot undo it in any degree, nor by shifting, or resubstituting, or reproviding ways can it discharge in the least what it owes. Why, then, should its engineer attempt it, or the court interpose, maybe to subtract something from the debt, by creating new easements? The order does not amend a defect or informality, as permitted by statute. Section 23, c. 724, Laws 1905. It recasts a conveyance and bargains anew. In the Matter of Bensel, 140 App. Div. 257, 125 N. Y. Supp. 128, it was pointed out that the amendment of the petition was to conform to the map, so as to "make both speak more precisely and definitely regarding the intent of the city as to the land and the rights therein to be taken, and not to express an intent to take other or different lands." There is in the present instance no attempt to make clear the intent of the city. It is manifestly to change the intent, and to express one intent in lieu of another.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

BURR, WOODWARD, and RICH, JJ., concur. HIRSCHBERG, J., dissents.