## Goodman et ux. v. City of Bethlehem, Appellant.

Argued April 15, 1936. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

60

*Daniel L. McCarthy,* for appellant.

*R. C. Mauch,* with him *Lehman, Hamilton, Castellucci & Adams,* for appellees.

OPINION BY MR. JUSTICE STERN, June 26, 1936 :

Plaintiffs are the owners of a tract of land at the northwest corner of Elizabeth Avenue and Nazareth Pike in the City of Bethlehem. The title deeds describe the property as extending 130 feet on each of these highways. On the southeasterly part of the tract is erected a hotel property. Nazareth Pike was 33 feet in width, but by ordinance No. 392, passed in 1923, the City of Bethlehem ordained that the center line of the pike be relocated and the pike widened to 70 feet. The new center line was established about 6½ feet west of the former line; the result was that a strip approximately 25 feet in width would be taken from the easterly part of plaintiffs' land, including a porch and a substantial part of the hotel building.

In 1930 the city passed ordinance No. 625 providing for the paving of the Nazareth Pike and resetting of the curb in accordance with the new lines, and entered into a contract with one Hausman for the necessary work. Hausman started in August, 1930, and completed the work in December, 1930; it was accepted by the city and paid for. In performing his contract Hausman excavated the roadway to the necessary depth up to the porch line of the hotel, and paved the roadway and constructed the curb from Dech Street, which bounds plaintiffs' property on the north, to the porch line on the east side of the hotel. He did not, however, tear down or disturb any portion of the hotel building or porch.

In 1931, upon petition of plaintiffs, the court appointed a board of viewers to fix the damages that had

accrued to plaintiffs' property and that of other owners of land abutting on the pike. On February 8, 1932, the board filed their report and on the same day it was confirmed nisi, damages being awarded to plaintiffs in the sum of $45,100. On March 5, 1932, the city appealed from the findings of the board to the court of common pleas and later an issue was framed.

On June 13, 1932, the City of Bethlehem passed ordinance No. 660, changing the west curbline and sidewalk space on the west side of the pike, and fixing the new westerly line so that no part of plaintiffs' porch or hotel building was taken, but only a triangular strip of land containing about 830 square feet; the ordinance repealed all former ordinances inconsistent therewith. On June 30, 1932, the city petitioned the court for an order permitting it to discontinue and abandon the condemnation proceedings in so far as they pertained to plaintiffs' property and referring the matter to viewers to determine the amount of reasonable costs and expenses incurred by plaintiffs by reason of the proceedings and the discontinuance thereof. On this petition a rule to show cause was granted, an answer was filed by plaintiffs, a stipulation of facts entered into, and argument was had thereon. On November 5, 1934, the court discharged the rule. In February, 1935, the case came on for trial before a jury which, on March 1, 1935, returned a verdict in favor of plaintiffs in the sum of $30,000. Defendant's motion for a new trial and for judgment n. o. v. were refused, and judgment was entered on the verdict. From that judgment the City of Bethlehem has taken the present appeal.

The principal question raised is as to the legal effect of ordinance No. 660, which, if not in terms, at least in result, practically abandoned the condemnation as far as plaintiffs' property was concerned. It is plaintiffs' contention that the condemnation proceedings had progressed to a point which foreclosed the right of the city to take such action.

As stated in *Reinbold v. Com.*, 319 Pa. 33, 35, "In nearly all the states of this country, it is declared that condemnation proceedings begun by any public authority, may be discontinued as of course if application so to do is made at a proper time, the uncertain question being—Until what time? Generally speaking, the answer to this question is determined by the applicable statutory provisions of the particular states, but in none of them does it seem to be doubted that the discontinuance should be allowed if seasonably applied for."

As far as cities in Pennsylvania are concerned, prior to the Act of 1891 it was held that the court might authorize a discontinuance of condemnation proceedings by a municipal corporation before final judgment was actually entered in favor of the owner: *Myers v. South Bethlehem*, 149 Pa. 85; *Moravian Seminary v. Bethlehem*, 153 Pa. 583. The Act of May 16, 1891, P. L. 75, section 7, provided that, "In case any such municipal corporation shall repeal any ordinance passed, or discontinue any proceedings taken, providing for any of the improvements mentioned in the preceding sections prior to the entry upon, taking, appropriation or injury to, any property or materials, and within thirty days after the filing of the report of viewers assessing damages and benefits, the said municipality shall not thereafter be liable to pay any damages which have been, or might have been, assessed, but all costs upon any proceeding had thereon shall be paid by said municipal corporation, together with any actual damage, loss or injury sustained by reason of such proceedings." A similar provision for cities of the third class was contained in the Act of June 27, 1913, P. L. 568, article XIV, section 7, as amended by section 36 of the Act of May 27, 1919, P. L. 310. The only material difference is the omission of the phrase, "together with any actual damage, loss or injury sustained by reason of such proceedings," and the addition of the clause, "including attorney fees to be fixed by the court on behalf of the owner or own-

ers." The Acts of 1913 and 1919 were repealed by the Act of June 23, 1931, P. L. 932, but substantially the same provision was reënacted by section 2847 of the new act. While still affording municipalities an opportunity to retreat from a scheme of condemnation where the report of the board of viewers indicates that the cost may be prohibitive, the purpose of this legislation was obviously to put a definite limit upon the time in which such privilege may be exercised, in order to prevent injustice to the landowner by a belated change of plan on the part of the municipal authorities.

It is clear that in the present case the attempt of the city to abandon the condemnation of plaintiffs' property was wholly invalid in that it failed to comply with either of the two time limits established by the statutes referred to. The report of the board of viewers was filed on February 8, 1932; thirty days thereafter would have been March 9, 1932, but ordinance No. 660 was not passed until June 13, 1932. Moreover, this was nearly two years after the city, through its contractor Hausman, had entered upon plaintiff's premises and commenced the work of paving and setting the curbs in accordance with the ordinance for widening. Ordinarily the title to property taken under right of eminent domain passes to the condemnor when a bond to secure the damages has been filed and has been accepted by the owner or approved by the court. At that time the grasp of the owner is released from the property and he is remitted to the bond for the damages which he may sustain. The condemnor is then at liberty to enter upon and take possession of the property. The Act of May 4, 1927, P. L. 728, made the power of taxation of municipalities security for the taking of private property for public use, and provided that they should not be required to enter any bond. The actual entry, therefore, by a city upon land which it has condemned constitutes a taking or appropriation which vests title in the city and fixes the right of the owner to the recovery of damages. In-

deed this was the law even prior to that act: *Shobert v. Bloomsburg,* 74 Pa. Superior Ct. 246.

It was said in *Wood v. Trustees of State Hospital,* 164 Pa. 159, 169: "If . . . defendants had a right to discontinue, and had been permitted to do so, there would have been nothing to prevent them from inaugurating new proceedings, and in like manner withdrawing therefrom; and thus they might commence and abandon new proceedings from time to time with a view of obtaining an award that would be satisfactory to themselves. Corporations and others invested with the power of eminent domain should not be permitted to thus experiment with judicial proceedings for any such purposes. Whenever it clearly appears . . . that there has been such an actual taking under the power of eminent domain, as invests the donee of the power with title, and gives to the landowner a vested right to compensation, the former should not be permitted to discontinue without the consent of the latter. Any other rule would be productive of oppression and other mischievous results."

In the case of condemnation by railroad corporations it has been well established that after the proceedings have progressed to the point of filing the bond, the company cannot alter its route as previously located, or reduce the width of the right of way, so as to divest the owner of his right to damages upon the basis of the appropriation originally fixed by the company: *Dilts v. Plumville R. R. Co.,* 222 Pa. 516; *Ferguson v. Pittsburgh & Shawmut R. R. Co.,* 253 Pa. 581.

In *Phila. v. Com.,* 284 Pa. 225, where the Delaware River Bridge Commission, by resolution, appropriated property of the City of Philadelphia, and thereafter there was an actual physical taking by the commission of part of the property, and then by another resolution the commission attempted to rescind its prior action by delimiting the quantity of land and rights taken, it was held that the resolution of rescission came too late.

The case of *May v. Co. of Westmoreland,* 98 Pa. Superior Ct. 488, is in accord with this general doctrine. It concerned the relocation of a state highway, and held that whatever the plan approved by the governor and filed in the department of highways might show as the width of the new road was to be taken as the measure of the appropriation when the land was entered upon for the construction of the highway, and all damages sustained by the landowner because of such taking for the full width shown in the plan, were to be ascertained and assessed in one proceeding. It was said in the course of the opinion (pages 492-3) : "The Secretary of Highways has power, with the approval of the Governor, to change and modify the plan, before an assessment of damages or *actual occupation* of the land affected."

There is nothing in *Franklin St.,* 14 Pa. Superior Ct. 403, or *Reinbold v. Com.,* 319 Pa. 33, which is contrary to these principles. They hold in substance that an immediate *right* of entry by the condemnor is not equivalent to an *actual* occupation and appropriation, and that the privilege of discontinuance is not lost unless there be an active domination over the property such as to amount to a "taking."

Defendant relies principally upon *Penn Builders, Inc., v. Blair Co.,* 302 Pa. 300, but all the rulings established by the previous cases and herein discussed are referred to with approval in that case. There the State condemned property for a highway of a width of 100 feet. Entry was made upon the land but the new roadway was actually macadamized for a width of only 33 feet. The court said (page 304) : "Having fixed the extent of the appropriation in this case in terms at 100 feet, the landowner could demand compensation, when a part was entered on, as if the entire strip marked on the map had been occupied by the new construction; for, having condemned land to that width, the State may in the future use it for highway purposes without further liability. It is immaterial,—unless later legislation hereafter re-

ferred to necessarily leads to a different conclusion,— that the present actual occupation is of but a portion of the whole taken." It is true the decision was that, since no award of damages had been confirmed, an alteration in the certified plan might be made by the proper authorities amending it so as to appropriate but 33 feet, which was all that the condemnor intended to take at the time. This conclusion, however, was apparently reached because of statutory permission, in the case of state highways, to certify plots covering additional strips on each side of the roadway to be included in the ultimate width as fixed by the secretary of highways with the approval of the governor. Moreover, whatever may have been the purport of the decision in that case, it dealt with a situation where the condemnor was the Commonwealth, and not a municipality bound by the legislation hereinbefore referred to.

Defendant argues that the action taken under ordinance No. 660 was not a discontinuance of the condemnation proceedings but merely a revision of the original lines of the highway. This attempted differentiation is obviously untenable, for otherwise lines might be revised to take only a comparatively negligible part of the property (in the present case, less than one-third of the appropriation covered by the original ordinance), and thus in effect abandon the proceedings as far as the landowner is concerned. The protection given to the latter by the statute cannot be thus impaired. As said in *Ferguson v. Pittsburgh & Shawmut R. R. Co.,* supra, page 590: "If, after the right of compensation has vested in the owner of the land, the corporation cannot defeat the claim for damages by abandonment of the right of way or discontinuance of condemnation proceedings, it necessarily follows, we think, that it cannot defeat a recovery of a part of the claim by conceding or granting to the owner a part of the rights it acquired by the appropriation. The concession is pro tanto an abandonment or a discontinuance of the proceedings or an offer to return

to the plaintiffs a part of the property acquired by the defendant under its right of eminent domain. The principle applicable in the one case rules the other. It is clear that after the right to compensation had vested in the landowners, under the eminent domain proceedings, the corporation could not defeat their claim for damages or diminish the amount of the damages by the abandonment of the property or by concession or reconveyance to the owners of any part of the right of way or of any rights or easements below or above the surface acquired by it." To the same effect is *Ralston v. Equitable Gas Co.*, 70 Pa. Superior Ct. 188.

Another question raised by defendant in the case arises from the fact that a predecessor of plaintiffs in title, one Widman, when deeding the property to his grantee Coss in 1929, made the conveyance expressly "under and subject, however, nevertheless, to the use by the public of so much of the above described lot and piece of land as the City of Bethlehem appropriated in the widening and straightening of the said Easton and Allentown Road, now Elizabeth Avenue; under and subject also, however, nevertheless, to the use by the public of so much of the above described lot and piece of land as the City of Bethlehem appropriated (if it appropriated Bethlehem Road now Linden Street)." It is contended that this latter clause constituted a dedication to the public of the part of the property appropriated by the City of Bethlehem under ordinance No. 392 and therefore defeats recovery by plaintiffs in the present proceedings. No such construction is warranted. It appears that in 1920 the City of Bethlehem had widened the Easton and Allentown Road to a uniform width of 60 feet, had actually entered upon and appropriated the necessary land, and had paid the then owner of plaintiffs' property for the part taken. This accounts for the under-and-subject clause in regard to the widening and straightening of Elizabeth Avenue. In respect to the Bethlehem Road or Linden Street widening, which is in-

volved in the present proceedings, the situation was entirely different when the deed in question was executed. The widening had merely been ordained by ordinance No. 392, and no entry was made by the city to effectuate the purpose of that ordinance until 1930. Therefore, at the time of the deed of Widman to Coss, none of the property had been "appropriated" by the City of Bethlehem for the widening of Nazareth Pike, and the under-and-subject clause in question—evidently inserted by way of caution on the part of the grantor not to attempt to give a better title than he might actually possess—had therefore no legal effect, either by way of limiting the extent of the conveyance or by way of a dedication to the public. Nor was the court below in error in refusing to permit evidence to be given of declarations of Widman prior to his delivery of the deed to Coss. The deed is not ambiguous and the rights of the grantee cannot be impaired by oral statements that may have been made before its execution and contrary to its terms.

Defendant complains that the court below was in error in overruling objections to evidence of values given by plaintiffs' experts because based upon a wrong conception of the amount of land remaining to plaintiffs as the effect of ordinance No. 392. It appears that in 1926 the City of Bethlehem passed a zoning ordinance providing for a setback restriction of 20 feet on all new buildings to be located along Nazareth Pike, and the testimony of these experts assumed that the frontage of the property on Elizabeth Avenue was diminished by this 20 feet in addition to the 25 feet actually provided by ordinance No. 392. However, the experts testified to a value after the taking based on a unit price per foot front, so that whatever error may have been made by them in their statement of the number of feet taken could be, and was, rectified by the court in charging the jury that the 20-foot restriction established by the ordinance of 1926 was not a factor in the present proceedings, and that therefore plaintiffs were not to be consid-

ered as being deprived of an additional strip of land of that width. The learned trial judge carefully explained to the jury that they were to correct the errors made by, the witnesses in this respect, and there could not have been any misconception on the part of the jury regarding this matter.

There are other assignments of error as to portions of the charge and the admissibility of evidence, but they are relatively unimportant and without merit. Those which relate to the charge are covered by what has already been said in discussing the principal legal questions involved in the case. Defendant's counsel complains that he was not permitted to cross-examine plaintiff David J. Goodman as to the price he paid for the property somewhat less than a year before the taking by the city, and that this was error *(Greenfield v. Phila., 282 Pa. 344)*. When plaintiffs' counsel had sought to elicit this same information from his client, defendant objected; when defendant's counsel desired to cross-examine on this point he was told by the court that he could do so later, but announced he would not exercise the right thus granted; afterwards he attempted to do so. The testimony indicates that the property was not purchased for cash but was traded in for other real estate; this situation would have necessitated an investigation into the value of these other properties which would undoubtedly have been confusing to the jury. As to defendant's contention that evidence was improperly rejected regarding improvements made to the hotel property after the passage of ordinance No. 392, it appears that the testimony offered did not distinguish between improvements made to the part of the property taken by the city and to that still remaining to the owner, and therefore it did not furnish a basis upon which this factor could be considered by the jury. The burden was upon defendant to establish the amount of such improvements by way of defense pro tanto to plaintiffs' claim for damages.

Apparently no contention has been made by defendant that the verdict as rendered by the jury is excessive if ordinance No. 660 is eliminated from the case. If, as is now held, the appropriation by the city has been of the entire width of Nazareth Pike as plotted by ordinance No. 392, it may ultimately result, if the city enforces its rights, that a substantial part of plantiffs' porch and hotel building will be torn down, and it was on that theory that the case was properly presented to the jury and determined by them.

The assignments of error are overruled and the judgment affirmed.