## CONCANNON et ux. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 141, September Term, 1962.]

*Decided March 12, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRES-COTT, MARBURY and SYBERT, JJ.

*William F. Mosner* and *Gordon G. Power* for the appellants.

*John J. Schuchman* and *Earl I. Rosenthal, Special Attorneys,* with whom were *Thomas B. Finan, Attorney General,* and

*Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

The issue in this appeal is whether the State Roads Commission, after it had exercised its right of immediate entry and completed construction of highway improvements, could validly amend its original petition and plat in condemnation proceedings to acquire an area somewhat different from that shown thereon, and require the property owner to refund the value of that part of the land no longer desired by it. The Circuit Court for Baltimore County granted the Commission leave to make such an amendment, and Mr. and Mrs. Concannon, the owners of the property involved, entered this appeal from the order. The order was passed while proceedings in the matter were pending before the Baltimore County Property Review Board.

Earlier in this term the case was before us on a motion by the Commission to dismiss the appeal on the ground that the order authorizing the amendment was not a final order and hence not appealable. In an opinion written by Chief Judge Brune (*Concannon v. State Roads Comm.,* 230 Md. 118, 186 A. 2d 220 (1962)), we held that the order was a final one and appealable because its effect was to determine the Concannons' principal claim adversely to their contention and to deprive them of the means of proceeding further to assert and enforce that claim.

The facts in the case were recited in detail in Chief Judge Brune's opinion, *supra,* and only such as are necessary for an understanding of our decision will be repeated. On September 6, 1960, the Commission filed a petition and plat in the Circuit Court for Baltimore County to acquire by eminent domain a portion of the Concannons' land in fee simple and slope and drainage easements in an additional portion, and to exercise its right of immediate entry as authorized by the Constitution of Maryland, Art. III, Sec. 40B, and Code (1957), Art. 89B, Secs. 9-18. The plat, showing the fee and easement areas sought, had been "finalized" by the signature of the Chairman of the Commission, and by recording with the secretary of the Com-

mission, the Secretary of State and the clerk of the appropriate Circuit Court (Baltimore County), as required by Sec. 14 of Art. 89B. The Commission paid into court the sum of $7,500, representing its estimate of the fair market value of the property and rights to be taken and the resulting damage to the remainder of the property. On October 25, 1960, the Concannons withdrew the amount deposited, without prejudice, and continued negotiations with the Commission.

Since the original plat did not clearly reveal whether any portion of the Concannons' house was within the easement area (the Commission claiming that a corner of it was and the Concannons that it was not), the Concannons state that the further negotiations concerned a determination of the exact area of taking and just compensation. They assert that it was finally determined by the Commission that only a corner of the porch "would necessarily be within the easement area," and that with this understanding they notified the Commission on April 7, 1961, that they would accept the deposit of $7,500 as full payment. The appellants did not, however, contend on this appeal that this notification created a binding agreement fixing the value, and we do not determine this matter.

Thereupon, the activities resulting in this appeal began. The Commission caused a new plat to be prepared, which is dated April 11, 1961. It is not contended by the Commission that the new plat was "finalized" in accordance with Sec. 14 of Art. 89B, prior to the date of the order permitting the amendment. The new plat calls for a slight increase in the taking of the Concannons' land in fee, and a small decrease in the easement area, and plainly shows that no part of the house is within the easement area. Because of the relocation and reduction of the easement area, the Commission asserts that the fair market value of the property taken and of the damage to the remainder is now $1,900, and it seeks a refund at the conclusion of the proceedings of $5,600 of the amount withdrawn by the Concannons.

On August 1, 1961, construction of the road improvement was begun and only the portions of the Concannon property shown on the second plat were utilized by the Commission. The work was completed in about two weeks. When a hearing on the mat-

ter began before the Property Review Board on September 29, 1961, the Commission sought to introduce evidence as to the value of the reduced taking shown on the second plat, to which the Concannons objected, demanding that the case proceed under the original plat. The Commission then announced that it would seek authority from the Circuit Court to substitute the new plat for the old, and proceedings before the Board were suspended. By its order of May 21, 1962, the Circuit Court permitted the amendment of the original condemnation petition and plat. A memorandum signed by the trial judge states that one of the admitted facts before him was "that prior to the hearing before the Property Review Board and prior to filing of the Petition to Amend, construction of the road improvements had been begun and completed on the Concannon property * * *." This appeal from the order ensued.

The precise issue before us is whether the trial court was right or wrong in permitting the commission to amend its petition and plat. While the Concannons rightly concede that the Commission could have amended, or even abandoned the entire project, before their property was taken, they contend that the taking occurred many months prior to May 21, 1962, the date of the allowance of the amendment, and that at the time of the taking the new plat had no validity because it had not been "finalized" pursuant to the provisions of Sec. 14 of Art. 89B. Consequently, it is their position that the taking was of the entire property delineated on the original plat as the property to be taken, that they are entitled to just compensation for such property, and that the Commission cannot change its mind and return a part of that which it has taken without their consent, which has never been given. On the other hand, the Commission maintains that it had the right to make the amendment, and that the amended plat's lack of compliance with the requirements of Sec. 14 was harmless as the Concannons have not shown that they suffered any injury by the taking of only what was shown on that plat.

In the opinion dealing with the appealability of the order authorizing the amendment, *supra*, Chief Judge Brune pointed out (at pp. 122-123 of 230 Md.) that the right of the property owners to compensation for the property and easements shown

on the first plat depends upon whether or not there had been a taking under the "early taking" provisions of Sec. 40B of Art. III of the Constitution and Sec. 9 of Art. 89B of the Code (1957), and in accordance with the first plat. After noting (at p. 123) that "[w]hether there has or has not been such a taking of the entire easement area shown on the first plat is the crux of the property owners' case here" he further stated (ibid.) : "*If* the property had actually been taken, as the appellants assert, they had acquired a right, under the constitutional provision against the taking of private property for public use without just compensation, to receive compensation for the property actually taken. * * *"

It is a *concessum* in the case that the appropriation of the Concannons' property occurred under the early taking, or immediate entry, provisions of the section of the Constitution and the statute mentioned in the preceding paragraph. The time of taking in such cases has been settled beyond question by our holding in *LaFontaine's Heirs v. LaFontaine's Heirs,* 205 Md. 311, 107 A. 2d 653 (1954), where Judge Hammond, after a careful review of the authorities, said for the Court (at p. 320 of 205 Md.) that "where the State Roads Commission is entitled to act under Section 40B of Article 3 of the Constitution and Section 9 of Article 89B of the Code, *and complies with all their requirements,* the taking occurs when there is an actual appropriation of the land to highway purposes." (Emphasis supplied.) Thus it is plain that the taking of the land and easements here involved occurred when the Commission actually entered upon the property and commenced highway construction on August 1, 1961—more than nine months before passage of the Circuit Court's order granting the Commission leave to amend its petition and plat.

We think that the words which are italicized in the above quotation from the *LaFontaine* case control our decision on the question whether the second plat had any validity at the time of the taking, so as to justify the Commission's proceeding under it. In the ordinary condemnation case filed under the provisions of the Constitution, Art. III, Sec. 40, the property owner retains his rights and the condemning authority acquires no interest until the actual payment or tender of compensation

for the property after trial. Thus, because it has acquired no interest and taken no possessory action, the condemnor in such cases has been permitted to amend or to abandon the project, even after trial. *Brack v. M. & C. C. of Balto.*, 125 Md. 378, 93 Atl. 994 (1915); *Lord Calvert Theatre v. Balto.*, 208 Md. 606, 119 A. 2d 415 (1956). But, after the Constitution was amended to permit immediate taking of property by the Commission for highway purposes, the Legislature in the implementing statute laid down careful and detailed requirements which "the Commission shall adhere to" in the exercise of this extraordinary procedure (Sec. 10 of Art. 89B). The Commission is charged to "determine the location of the highway" or reconstruction and prepare plats "showing the fee simple and easement area necessary for acquisition by the Commission", and to make such investigation as is necessary to determine the fair value of the property and rights to be acquired, and resulting damages, if any (Sec. 11). The Commission is then required to "finalize" and record the plats, and only after payment of the estimated value of the taking to the property owner or into court and the filing of a petition in court is the Commission authorized to "take possession of the *property designated on the * * * plats*". (Secs. 13-14, emphasis supplied.)

The statute does not vest the Commission with authority to change or abandon its plans to acquire what the *recorded* plats show after construction begins. As was said in *LaFontaine* (at p. 320 of 205 Md.), "The clear implication [of the cases] is that an authorized physical seizure of the property for public use vests in the landowner the right to just compensation and marks the end of the right of the condemnor to abandon." The same rationale applies to the right to amend, after a taking. *City of Philadelphia v. Commonwealth*, 130 Atl. 491 (Pa. 1925); *Goodman v. City of Bethlehem*, 185 Atl. 719 (Pa. 1936); cf. *In re Catskill Aqueduct*, 137 N. Y. S. 339 (1912).

We think that the meticulous requirements which the Legislature imposed upon the Commission in immediate entry cases, and the language which it employed, as noted above, necessitate the conclusion that the rights of the Commission and of the property owner are fixed and determinable by reference to the plat or plats "finalized" and of record at the time of the tak-

ing of the property, and not to other plats which do not conform to the statutory provisions. The fact that the informal second plat was exhibited to the appellants prior to construction, as was conceded by them, was without significance because they did not agree that construction should proceed in accordance with it. Nor was the change in plans harmless, since the taking fixed appellants' right to just compensation for the property and easements shown on the first plat.

Likewise, we think that the scheme of Secs. 9-18 of Art. 89B and their phraseology indicate strongly that a taking of a part of the property shown on a "finalized" and recorded plat is a taking of all. In addition to the inferences which may be drawn from provisions of the statute which we have pointed out above, we think it is significant that the property owner may withdraw *all* of the deposit paid into court as the estimated value of the entire projected taking shown on the recorded plat. That the extent of the taking is not left to the Commission's discretion is made clear, we think, by the provision that if it exercises its right, it shall "take possession of the *property designated on the above-mentioned plats.*" We therefore conclude that a taking of part of the property and easements delineated on the original plat as intended to be taken was an appropriation of the whole, so that the Commission may not now unilaterally return unused portions to the owner and by that device effect a diminution of the ultimate award to the property owner. For cases in accord, see *City of Philadelphia v. Commonwealth, supra; Penn Builders v. Blair County,* 153 Atl. 433, 75 A.L.R. 850 (Pa. 1931) ; *Goodman v. City of Bethlehem, supra,* and cases collected in Anno. at 5 A.L.R. 2d 724.

We hold, therefore, that the order granting the Commission leave to amend its petition and the original plat was erroneously passed, and that the further proceedings necessary for a determination of the appellants' damages must be conducted on the basis of an appropriation, already accomplished, of the property and easement area designated to be taken on the original plat.

> *Order reversed; case remanded for further proceedings not inconsistent with the foregoing opinion; costs to be paid by appellee.*