William W. CHANDLER, Jr., Trustee-Conservator, J. Park Smith, Jr., and Edith M. Smith Malone, Land Tenants, Appellants,

v.

UNITED STATES of America, Appellee.

No. 8638.

United States Court of Appeals
Tenth Circuit.

Jan. 17, 1967.

Jerry W. Hannah, Topeka, Kan. (Richard Ankerholz, Lyons, Kan., Clayton M. Davis and Mark L. Bennett, Sr., Topeka, Kan., on the brief), for appellants.

William M. Cohen, Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Atty. Dept. of Justice, Newell A. George, U. S. Atty., and Clarence J. Malone, Asst. U. S. Atty., on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The appellee filed this condemnation suit in the United States District Court for the District of Kansas to acquire land in connection with the Quivera National Wild Life Refuge in Stafford County, Kansas. The issue of just compensation was tried before a commission, appointed pursuant to Rule 71A(h), F.R.Civ.P., its report was approved and confirmed by the court and this appeal followed.

The procedural background is necessary for an understanding of the issues involved. The complaint here was filed on October 23, 1958, and the first Declaration of Taking on April 21, 1960. Sometime prior to the filing of the action, the government had entered into option purchase agreements with the known and determinable life tenants and remaindermen, covering the two tracts here in controversy. These agreements each contained a provision that in the event clear title would not pass, a friendly condemnation suit would be instituted but in that event the agreed purchase price would still be binding on the parties. A clear title could not be procured because of a conveyance in 1928 by the then fee owner to certain relatives for life, with remainders and reversions resulting in the possibility that unknown and unborn remainder interest owners still exist. In the condemnation case, a trustee was appointed for the unknown and unborn devisees and appellant Chandler was appointed trustee-conservator to supervise, collect and invest funds and to defend the case generally.

The April 21, 1960, Declaration of Taking purported to take the full fee simple title to both tracts, subject "to mineral rights outstanding in third parties, * * * and to the reservation by the owners of the right to prospect for, mine or remove oil and gas for a minimum period of 15 years from the date title vests in the United States * * *." Exhibits attached to the Declaration amplified the rights of the parties in regard to this reservation.[1] This Declaration of Taking reserved the minerals to the landowner for a period of fifteen years, but gave the government a percentage of any royalties from the production of oil and gas during that period. On March 21, 1963, after securing authority from the court, the government filed an "Amendment To Declaration of Taking" eliminating this retained royalty percentage provision. Appellants attack the right of the government to file the second Declaration of Taking.

Appellee first contends this question cannot now be raised because appellants, in effect, acknowledge the Amendment and acquiesced in it. It is true the point was not raised until appellants filed their motion for a new trial but the question was raised below and we will consider it.

█ The law is clear that in eminent domain cases the government, after filing a declaration of taking and depositing in court the estimated just compensation, cannot change its mind and divest itself

---

1. As to tract No. 52, the pertinent part of Exhibit E reads: " * * * In the event of oil or gas being discovered and developed forty per cent (40%) of one-eighth (⅛) royalty of all oil and gas so removed and saved shall be paid to the United States of America."

As to tract No. 55, the pertinent part of Exhibit F reads: " * * * In the event of oil or gas being discovered and developed twenty-five per cent (25%) of one-eighth (⅛) royalty of all oil and gas so removed and saved shall be paid to the United States of America."

of the title taken.[2] That rule of law or statutory interpretation of 40 U.S.C. § 258a (the Declaration of Taking Act) presumes a lawful taking at the inception, which the record shows was not the situation here.

In this case after the filing of the 1961 Declaration of Taking, the chief judge of the Kansas District in a condemnation case involving this same project, held the government was without statutory authority to take the quantum of title as was taken in the 1961 Taking here. That court held the government could take the fee title, excepting therefrom the mineral rights for a period of years, but could not then reserve unto itself a percentage of the royalty. This reservation was characterized by the court as the taking of "a partnership-like estate."[3]

■ We agree with the decision of the district judge holding that the reservation of royalty to the government constituted an unlawful taking for the reasons such a taking certainly has no possible connection with the harboring and protecting of wildlife,[4] which is the paramount purpose of the condemnation, and, such a taking was without legal authority and an abuse of discretion. It was upon the basis of this ruling that the government requested and was granted leave to file the Amended Declaration of Taking in this case. This second taking merely eliminated the illegal reservation to the government of a percentage of royalty.

■ Appellants attack the order confirming and approving the report of the commission on several grounds. First, because no instructions were given to the commission as required by United States v. Merz et al., 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629. In this connection it should be noted that the commission was appointed, the hearing before it was held and its report was filed prior to the Merz decision. These facts do not preclude the application of Merz but we believe the entire proceeding had before the commission and its report should be evaluated to determine whether they meet the overall requirements of Merz. This we will do.

■ Under Merz, the commission should be instructed as to the conduct of the hearing, the right to view the property and the limited purpose of the view, the admissibility of evidence, the use of expert witnesses and the weight to be given to such testimony, the rules governing evidence as to value of the property, severance damages and the kind of a report to prepare and file. The commission here was appointed on the motion of appellants and they made no request for the court to give the commission instructions and none were given. In the light of the Merz opinion the composition of the commission seems to be of some importance. Two of the three members of the commission were well qualified lawyers, one of the lawyers, a man with many years of trial experience, was chairman of the commission. The third member was a real estate broker. A court reporter was in attendance upon the commission and a record was made of all its proceedings. The record shows the hearing was conducted in an orderly judicial fashion, objections to evidence were intelligently and correctly ruled upon, each side was given an opportunity to fully present its side of the case, and viewing the entire proceeding with critical judicial eyes, we are unable to find any prejudicial errors. Although no instructions were given to the commission, we believe the conduct of the hearing meets all of the procedural requirements of Merz.

---

**2.** See Catlin et al. v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911; Dow v. United States, 5 Cir., 238 F.2d 898, reversed on other grounds, United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109.

**3.** This memorandum opinion is not reported but is contained in the file of T–1967 in the office of the Clerk of the United States District Court for the District of Kansas.

**4.** Consider the general condemnation statute, 40 U.S.C. § 257 and the statute appropriating money for this project, 64 Stat. 595, 693, together with the various provisions of the "Migratory Bird Conservation Act", 16 U.S.C. § 715 et seq.

Appellants point error to the admission of government's Exhibits K and L. These exhibits were option purchase agreements entered into between the government and certain of the known title holders to the tracts in question. They were executed in years prior to the filing of the condemnation but we cannot say they are too remote in time to be inadmissible. In deciding the objection to them we are concerned with the purpose of their admission.

■■ The order of appointment clearly defines the only function to be performed by the commission: "to determine the issues of just compensation * * *." This was the only concern of the commission. It had neither statutory nor court authority to determine the ownerships of the tracts involved or who was entitled to receive the awards. At the outset of the commission hearing, the chairman stated to counsel, "So far as the Commission is concerned the only issue is the fair market value of the property and we don't care who owns it * * *." After that the government's Exhibits K and L were admitted into evidence. It seems clear to us from the entire record, those exhibits were admitted as evidence of value and are in the same evidentiary category as evidence of recent sales. We find no error in their admission into evidence for that purpose. The commission had a right to consider them, along with all of the other evidence, on the issue involved and it did not attempt to legally evaluate these instruments for the purpose of determining interests in the property or to make any other improper use of them.

Appellants attack the report of the commission as failing to clearly set out the reasoning used in arriving at the awards. The report is in appropriate legal form showing the place and date of hearing, the legal description of the property taken, the owners of the tracts and parties to the litigation, a fair summary of the evidence presented by both sides describing the terrain and current use of the tracts, valuations of the tracts as testified to by the experts on both sides, findings as to the highest and best use of the property taken, combination use of the two tracts involved, comparable sales in the vicinity considered by the commission and distinctions because of cultivation, altitude, irrigation and terrain and fair market value of the two tracts.

■ The commission concluded from the evidence that just compensation for tract # 52 was $23,825.75 and for tract # 55 $27,324.50. The award as to tract # 52 was lower than the values fixed by the experts on both sides but in accord with the purchase price set out in the purchase agreement. The finding clearly reflects that the commission, as to this tract, gave great weight to the value reflected by the option agreement. This was not improper, although the expert evidence on both sides apparently was rejected. The award as to tract # 55 was higher than the value fixed by one of the government's expert witnesses, higher than the value agreed upon by the option purchase agreement and lower than the value testified to by one of the government witnesses and both of the landowner's experts. Justice Douglas, in the Merz opinion, supra at 199, 84 S.Ct. at 643, said, "We do not say that every contested issue raised on the record before the commission must be resolved by a separate finding of fact. We do not say that there must be an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based."

■ The report clearly reflects, in summary, all of the evidence considered by the commission. This evidence shows tract # 55 to be of higher value than tract # 52, although each of the expert witnesses placed a different value on the tract and no one of them agreed with the value fixed by the option purchase agreement. The award was within the range of the evidence. The commission simply found itself in the same position as a jury, when confronted by conflicting evidence, and was compelled to use its best judgment in arriving at an award within that range. This it did, and we are reluctant to disturb the award, as

was the lower court, even though it may be concluded that some technical deficiency exists in the phraseology of the report of the Commission.

In conclusion, we should also comment, that although Rule 61 F.R.Civ. P. is not specifically applicable to proceedings before a land commission, we believe the rule of law there enunciated may properly be relied upon by the trial court in ruling upon objections to the report of a commission and should be adhered to in appellate review of such proceedings. We apply that rule of law here and we are unable to find any error or defect in the proceedings affecting the substantial rights of the parties. There is nothing in the record to show prejudice to appellants and we are convinced that all of the parties received a fair and impartial hearing.

Affirmed.