CARL ROESSLER, INC. *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued October 10, 1967—decided February 9, 1968

*Robert G. Zanesky* and *Robert A. Slavitt,* with whom, on the brief, was *Abraham D. Slavitt,* for the plaintiff.

*Clement J. Kichuk,* assistant attorney general, with whom, on the brief, were *Harold M. Mulvey,* attorney general, and *Jack Rubin,* assistant attorney general, for the defendant.

RYAN, J. The plaintiff brought this action, seeking a declaratory judgment determining the respective rights of the parties following the filing by the defendant of an amended notice of condemnation which would reduce the original area of acquisition and which by its terms would require the plaintiff to accept a release of that portion or area by which the defendant desires to reduce his acquisition. Upon a stipulation of facts, the trial court reserved the questions presented for the advice of this court.

The parties have stipulated to the following facts: The defendant, as highway commissioner, was

authorized by §§ 13-145 and 13-120 of the 1958 Revision of the General Statutes to take property for highway purposes and to assess damages resulting therefrom. On February 9, 1962, pursuant to his statutory authority, the defendant filed with the clerk of the Superior Court for New Haven County a notice of condemnation and took, for the purpose of constructing interstate route 91, certain lands owned by the plaintiff. The notice described three parcels of land with a combined area of 0.47 of an acre, together with the buildings appurtenant thereto and including portions of other buildings standing on the plaintiff's remaining land. One of the buildings on the plaintiff's remaining land is referred to as "the main processing and cooler building." The defendant assessed damages for the taking in the sum of $240,200. The plaintiff, claiming to be aggrieved because of the inadequacy of the assessment of damages, appealed to the Superior Court, the action being returnable on the first Tuesday of July, 1962. In accordance with § 48-11 of the General Statutes, the sum of $240,200 was deposited with the clerk of the Superior Court, and thereafter, on July 13, 1962, disbursement of the sum to the plaintiff was ordered by the court. At this time, certain mortgages held by the New Haven Savings Bank, Anna Roessler and Fred Roessler, as set forth in the original notice filed in the Superior Court on February 9, 1962, were released as to the three parcels of land described in the notice. On July 8, 1962, the appeal was referred to a state referee to hear the evidence and report the facts to the court. The notice of condemnation indicated that the taking included the severance of a portion of the plaintiff's main processing and cooler building, and, on Novem-

ber 19, 1962, the defendant advised the plaintiff to vacate that portion of the building because the demolition division of the highway department was in the process of scheduling advertising dates for the construction of the highway in the area. On August 27, 1965, more than three and one-half years after the filing of the original notice of condemnation, the defendant filed with the clerk of the Superior Court an amended notice of condemnation and assessment of damages, made by him purportedly pursuant to Public Acts No. 309 and No. 310 of the 1965 February special session. These statutes, which are now §§ 13a-73 (b) and 13a-73 (f) of the General Statutes, became effective June 18, 1965. The amended notice, which was filed without the consent of the plaintiff and without an order of court, revised the taking line, which resulted in a reduction of the taking area to 0.41 of an acre. It described three parcels of land and recited that all of the buildings which were located either totally or partially on parcel 1 and parcel 3 "have been demolished and removed, and . . . in view of the amended taking herein . . . , it will not be necessary to take, sever or interfere with, in any manner, any buildings or structure standing on owner's remaining land." The damages to the plaintiff were reassessed at $115,900, and thereafter, the defendant made demand on the plaintiff to return the sum of $124,300, representing the difference between the amount of the original assessment and the amount of the amended assessment. On August 28, 1965, the defendant filed this amended certificate of taking in the office of the New Haven town clerk pursuant to § 13a-73 (b) of the General Statutes, as amended in 1965, which provides that, upon the filing of the certificate, the real property taken becomes vested

in the state of Connecticut in fee simple. The plaintiff refused to return any money to the defendant and appealed to the Superior Court, claiming that the assessment of damages was inadequate and that the defendant had no authority to amend his original notice of condemnation and taking or to abandon it without the consent of the plaintiff. Both the plaintiff's original appeal for a reassessment of damages and its appeal from the defendant's amendment to the original notice of taking are still pending.

The questions upon which advice is desired are as follows: (1) Under the facts of this case, does the defendant, the state highway commissioner, have the authority and power to so amend the original "notice of condemnation" and thereby reduce the area of acquisition originally intended to be acquired? (2) Can the defendant amend the original notice of condemnation after the pleadings have been closed and the matter referred to a state referee for a reassessment of damages without obtaining the consent of the plaintiff or without obtaining an order of court? (3) If the defendant has the right to amend, as set forth in questions 1 and 2, does the plaintiff have a cause of action against the defendant for damages resulting between the time of the original notice of condemnation and the time of the filing of the amended notice of condemnation?

The fundamental question before us is whether, on the facts of this case, the defendant may abandon a portion of the property condemned in his original notice of condemnation and require the plaintiff to return to the state a portion of the deposit disbursed to it under General Statutes § 48-11.

"In every form of procedure for appropriating land for the public use, there must be a point when the right of the condemnor to discontinue the proceedings is lost and the right of the owner of the land to the compensation becomes vested, but there are few principles of general application which determine the incidence of this point, and it depends largely upon the statutes and practice of the different states.

"As far as the constitutional rights of the condemnor are concerned, it would be competent for the legislature to provide that condemnation proceedings should not be discontinued after the first step had been taken, or it might be provided that the owner's right to the compensation should become absolute at any later point in the proceedings, for a corporation [or the state] granted the power of eminent domain must take it with whatever conditions the legislature may choose to burden it. It is also well settled that so far as the rights of the owner of the property are concerned, eminent domain proceedings are, from their inception until the taking is complete, wholly within the control of the state which authorized them, and at any time during the pendency of the proceedings the condemnor may be permitted either to abandon the undertaking altogether, or to select a different location, and to give up all claim to the site which it had originally chosen and already started to take. On the other hand, once the land is actually taken, the owner is constitutionally entitled to be paid its value in money, and if the public improvement is abandoned before he is paid, the owner cannot be compelled to take back the property with damages for its detention only. There can be no discontinuance of the proceedings once the taking is com-

plete. When the taking is complete is a question of substantive law depending upon the eminent domain procedure of each state. It must be remembered, however, that the *punctum temporis* when the taking is effected, while it marks the limit beyond which the right to discontinue the proceedings cannot constitutionally extend, is not necessarily the test of the expiration of the right, since the legislature may, if it sees fit, deny the right to discontinue at an earlier period, and the question is really one of determining the intention of the legislature, subject only to the aforementioned constitutional limit." 6 Nichols, Eminent Domain (3d Ed.) § 26.42.

It is necessary to examine the statutes in effect at the time of the filing of the notice of condemnation by the defendant. Section 13-145 (Rev. 1958) provided that the commissioner may "take any land he finds necessary" for highway purposes and that the owner "shall be paid by the state for all damages." The assessment of damages "shall be made by the highway commissioner and filed by him with the clerk of the superior court in the county in which the land affected is located." It required the clerk to give notice to each owner of land affected and provided that "at any time after such assessment has been made . . . , the physical construction of . . . [the highway] may be made." It is obvious that this statute gave to the commissioner the right of immediate possession of the property condemned. Section 13-149 (Rev. 1958) provided that the highway commissioner, within thirty days of the acceptance of any assessment or reassessment of damages by the landowner, or within thirty days of the final determination of any appeal taken as provided in § 13-150, shall file in the land records a certificate setting forth the details of the taking "and, upon

the filing of such description, title to such land in fee simple shall vest in the state of Connecticut." Section 13-150 (Rev. 1958) provided for an appeal to the Superior Court within six months by any person claiming to be aggrieved by the assessment and that the "pendency of any such application for reassessment shall not prevent or delay the layout, . . . or other improvement of any such highway." Section 48-11 provided, as it still does, that when land is taken by the state under any provisions of the General Statutes and the state and the owner are unable to agree on the amount to be paid as compensation, the taking authority shall file with the clerk of the court to which a petition for the assessment of just damages had been preferred, a statement of the sum of money estimated by such authority to be just compensation for the property taken. This sum shall be deposited in court to the use of the persons entitled thereto, and notice shall be given by the clerk. Upon application by any owner, the court, after determining the equity of the applicant in the deposit, may order that sum or any part thereof to be paid on account of the just compensation to be awarded on the appeal. Interest shall not be allowed in any judgment on so much of this amount as had been deposited in court.

It is the claim of the plaintiff that the commissioner had no legal right to withdraw the condemnation or to abandon it in whole or in part because, under § 13-145, the "taking" of the property was complete upon the filing of the notice of condemnation. In *Clark* v. *Cox*, 134 Conn. 226, 56 A.2d 512, the plaintiffs claimed interest on the judgment reassessing damages in a highway condemnation from the date of the filing of the assessment by the

commissioner to the date of judgment. The defendant highway commissioner had taken the land pursuant to § 1528 of the 1930 Revision, the provisions of which were identical with those of § 13-145. There was nothing in the record to show that the plaintiffs had been physically dispossessed. This court held that the taking of the land was complete when the assessment of benefits and damages was filed with the clerk of the Superior Court and that the plaintiffs were entitled to receive interest on the amount awarded as damages from the date of the taking to the date of judgment. When the events described in *Clark* v. *Cox,* supra, occurred, the state, in highway condemnations, took merely an easement for highway purposes. *Kratochvil* v. *Cox,* 129 Conn. 246, 249, 27 A.2d 382. Section 425e of the 1939 Cumulative Supplement, which was in effect at that time, required the highway commissioner, within thirty days of the assessment of any damages and benefits, to file for record with the town clerk of the town where any such land was located a description of all land taken. This section was repealed in 1947, and § 367i of the 1947 Supplement (Rev. 1949, § 2266) was adopted. It became § 13-149 in the 1958 Revision, and under its provisions the filing of the final certificate of taking by the commissioner vests title in fee simple in the state. This latter statute was in effect at the time of our decision in *Salgreen Realty Co.* v. *Ives,* 149 Conn. 208, 177 A.2d 673. Although the principal issue in the *Salgreen* case was the question of interest on the judgment reassessing damages, as determined by § 48-11, we followed the rule of *Clark* v. *Cox,* supra, that the land is taken when the assessment by the commissioner is filed. In *Colaluca* v. *Ives,* 150 Conn. 521, 529, 191 A.2d 340, we assumed "without deciding,

that the filing of the certificate by the commissioner constituted a 'taking' of the property which not only disabled him from abandoning its acquisition by condemnation but also gave the plaintiff a right, protected by the constitution, to receive just damages." This statement is purely dictum, and the case was decided on other grounds.

The point of the present inquiry is not whether such a taking would require the payment of interest on the amount awarded as damages from the date of the taking to the date of judgment, as in *Clark* v. *Cox,* supra, and *Salgreen Realty Co.* v. *Ives,* supra. The problem is not whether it was such a taking as required the value of the property for purposes of the assessment of damages to be considered as of the date of the filing of the notice of condemnation, as in *Shannahan* v. *Waterbury,* 63 Conn. 420, 421, 28 A. 611. The question here is whether there has been such a taking as to disable the defendant from abandoning a portion of his acquisition by condemnation and to prohibit him from requiring the plaintiff to return to the state a portion of the deposit which it received. See *Kaufman* v. *Valente,* 115 Conn. 428, 432, 162 A. 693. We have not previously dealt with this problem with reference to the statutes involved in the present case.

The word "taken" as used in the fifth amendment to the constitution of the United States and article first, § 11, of the Connecticut constitution "means generally the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain." *Bishop* v. *New Haven,* 82 Conn. 51, 58, 72 A. 646.

In a Maryland case, under an eminent domain statute for state highways, substantially similar to the Connecticut statute, the issue was whether the state roads commission, after it had exercised its right of immediate entry and completed construction of highway improvements, could validly amend its original petition and plat in condemnation proceedings to acquire an area somewhat different from that shown thereon and require the property owner to refund the value of that part of the land no longer desired by it. The commission had paid into court a sum representing its estimate of the fair market value of the property. The plaintiff withdrew the amount deposited, without prejudice, and continued negotiating with the commission. It was held that the taking of part of the land delineated on the original plat as intended to be condemned was an appropriation of the whole, so that the commission could not unilaterally return unused portions to the landowners and by that device effect a diminution of the award and require the landowners to refund part of the amount previously deposited in court by the commission and withdrawn by the landowners. *Concannon* v. *State Roads Commission,* 231 Md. 87, 93, 188 A.2d 700; see *Goodman* v. *Bethlehem,* 323 Pa. 58, 66, 185 A. 719; *Matter of Simmons (Catskill Aqueduct),* 152 App. Div. 503, 505, 137 N.Y.S. 339. The taking of the property occurs as a matter of law under immediate possession statutes when the state roads commission actually enters upon property and appropriates it for highway purposes. *State Roads Commission* v. *Orleans,* 239 Md. 368, 376, 211 A.2d 715.

The cases hold that the right to abandon ceases when compensation has been paid or tendered or when the authorized appropriation of land for pub-

lic use has actually taken place. *LaFontaine's Heirs v. LaFontaine's Heirs,* 205 Md. 311, 319, 107 A.2d 653; *Philadelphia Appeal,* 364 Pa. 71, 75, 70 A.2d 847; *Philadelphia* v. *Commonwealth,* 284 Pa. 225, 234, 130 A. 491. Once a condemnor institutes proceedings, gains possession of condemned property by depositing the amount of the commissioner's award in the registry of the court, applies the property to the purpose for which it was condemned, and is no longer in a position to restore the status quo, dismissal of any or all condemnees would be improper and prejudicial. *Fort Worth Concrete Co.* v. *State,* 400 S.W.2d 314, 316 (Tex.).

The same result has been reached by the federal courts in condemnations of land by the United States government. "The law is clear that in eminent domain cases the government, after filing a declaration of taking and depositing in court the estimated just compensation, cannot change its mind and divest itself of the title taken." *Chandler* v. *United States,* 372 F.2d 276, 278 (10th Cir.). "Broadly speaking, the United States may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings. Under the first method—physical seizure—no condemnation proceedings are instituted, and the property owner is provided a remedy under the Tucker Act . . . to recover just compensation. . . . Under the second procedure the Government may either employ statutes which require it to pay over the judicially determined compensation before it can enter upon the land . . . or proceed under other statutes which enable it to

take immediate possession upon order of court before the amount of just compensation has been ascertained. . . . Although in both classes of 'taking' cases—condemnation and physical seizure—title to the property passes to the Government only when the owner receives compensation, see *Albert Hanson Lumber Co.* v. *United States,* 261 U.S. 581, 587 [43 S. Ct. 442, 67 L. Ed. 809], or when the compensation is deposited into court pursuant to the Taking Act, . . . the passage of title does not necessarily determine the date of 'taking.' The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues. See *United States* v. *Lynah,* 188 U.S. 445, 470–471 [23 S. Ct. 349, 47 L. Ed. 539]; *United States* v. *Rogers,* 255 U.S. 163 [41 S. Ct. 281, 65 L. Ed. 566]; *Seaboard Air Line R. Co.* v. *United States,* 261 U.S. 299 [43 S. Ct. 354, 67 L. Ed. 664]." *United States* v. *Dow,* 357 U.S. 17, 21, 78 S. Ct. 1039, 2 L. Ed. 2d 1109; see *Mastic Acres, Inc.* v. *State,* 46 Misc. 2d 660, 663, 260 N.Y.S.2d 532.

Section 13-149 provided that "title to such land in fee simple shall vest in the state of Connecticut" upon the recording of a certificate within thirty days of the final determination of the plaintiff's appeal. The fact that title to the area of acquisition described in the original notice of condemnation has not vested in the state does not mean that there was no taking of the plaintiff's property. "It is well settled that a taking of property within the meaning of the constitution may be accomplished

without formally divesting the owner of his title to the property or of any interest therein." 2 Nichols, Eminent Domain (3d Ed.) § 6.1 [1].

In the instant case as of the time of the filing by the defendant of the amended certificate of condemnation on August 27, 1965, the state had taken actual physical possession of the area, demolished and removed all of the buildings which were located either totally or partially on parcel 1 and parcel 3, and had constructed an interstate highway on the land. Several mortgages had been released prior to the disbursement by the court to the plaintiff of the sum deposited by the state. The defendant urges that, since the filing of the amended certificate of condemnation recites that "it will not be necessary to take, sever or interfere with, in any manner, any buildings or structure standing on [the] owner's remaining land," the plaintiff's possession of such structure was never disturbed. In the light of the stipulation of facts which recites that the original taking included the severance of a portion of the main processing and cooler building and that on November 19, 1962, the defendant advised the plaintiff to vacate that portion of the building because the demolition division of the state highway department was in the process of scheduling advertising dates for the construction of the highway, we cannot agree with the defendant's claim.

Upon the facts of the present case and the statutes in effect at the time of the filing of the original notice of condemnation, we conclude that when the condemnor took actual physical possession of the property and devoted it to a public use, there was a taking of property not only within the intention of the legislature, as expressed in the statutes, but in the constitutional sense as well. Thereafter,

there could be no unilateral abandonment by the condemnor of the area of acquisition or any part thereof.

To the first question in the reservation we answer, "No"; the result we have reached with respect to the first question makes it unnecessary to answer questions 2 and 3.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.